**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

JIHAD BASHIR,              :    Civil No. 1:21-CV-01720
                          :
      Petitioner,       :
                          :
      v.               :
                          :
BARRY SMITH, *et al.*,       :
                          :
      Respondents.      :    Judge Jennifer P. Wilson

## MEMORANDUM

Before the court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by Jihad Bashir ("Petitioner") premised on the ineffective assistance of trial counsel.  (Doc. 1.)  Because the state court's determination was not unreasonably under the standard from *Strickland v. Washington*, 466 U.S. 668 (1984), the court will dismiss the petition.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The factual history of the criminal action is summarized by the Court of Common Pleas of York County in its January 6, 2020 order denying Petitioner's Post Conviction Relief Act ("PCRA") petition:

> [Petitioner]'s convictions arose from the September 6, 2011 shooting of [Victim], who testified as follows.  On the night in question, [Victim] and his aunt were smoking cigarettes outside the home of [Victim]'s mother on 207 Jefferson Avenue, York.  [Victim]'s aunt entered the house to use the bathroom, and [Victim] remained outside.  [Victim] looked to the right, to the left, and again to the right.  When he turned back to look left, [Victim] saw "a guy standing in front of [him]."

At that time [Victim] was not impaired, and the man was ten feet away. [Victim] recognized the person and identified him at trial as [Petitioner]. [Petitioner] asked [Victim] where [Victim]'s nephew "Blizz" was located. [Petitioner] then "started fumbling around,. . . pulled out a gun," and shot [Victim] in the face with a .357 Magnum. After shooting [Victim] a single time, [Petitioner] ran away.

[Victim] explained that he recognized [Petitioner] because [Petitioner]'s mother had introduced [Petitioner] to [Victim]. [Victim] also saw [Petitioner] two weeks prior to the incident seated in a car. At that time, [Victim] overheard [Petitioner] telling someone that his name was Jihad. [Victim] testified that he did not initially remember who shot him, but when his memory returned in November, he called his mother and told her that [Petitioner], who was Tanoue's son, had committed the crime.

Eartha, [Victim]'s mother, confirmed that, in November 2011, while [Victim] was still hospitalized, he called her on the telephone and said, "[I] remember now, I know who shot me, and he said [Petitioner]. He said big Tanoue's son." [Victim's mother] did not know [Petitioner] but was acquainted with his mother, whose first name was Tanoue. [Victim]'s brother, Michael, also testified that, in November 2011, [Victim]'s memory of the events of the shooting returned. [Victim] also told Michael that [Petitioner], Tanoue's son, was his assailant.

York Detective Travis Sowers testified that he was the lead detective in the investigation into the shooting. After [Victim] returned to his mother's home from the hospital and rehabilitation, Detective Sowers visited him. Detective Sowers testified, "I asked him who shot him. He advised me [Petitioner]. The next thing I asked, [Petitioner]? And he said, yes, the one who lives on South Street." Detective Sowers told the jury that [Petitioner] lived with his mother, Tanoue . . ., at 21 East South Street. Five days after this first interview, Detective Sowers showed [Victim] [Petitioner]'s picture, and "he hit the picture and said that's the guy who shot me right there, that's Tanoue's son[.]"

Based upon this evidence, a jury convicted [Petitioner] of attempted murder and aggravated assault graded as a first-degree felony. The matter proceeded to sentencing on May 1, 2014, where the court

imposed a twenty to forty year term of imprisonment as to the attempted murder and no penalty on aggravated assault since that crime merged for sentencing purposes.

(Doc. 2-14, pp. 1–3) (internal citations omitted).

Petitioner then filed a post-sentence motion raising a weight-of-the-evidence challenge, which was denied by the trial court. *Commonwealth v. Bashir*, No. 1313 MDA 2014, 2015 WL 7079055 at *2 (Pa. Sup. Ct. June 4, 2015). Petitioner appealed the denial to the Superior Court of Pennsylvania again raising the weight-of-the-evidence challenge. *Id*. The judgment was affirmed. *Id*. at *3. On December 17, 2015, the Pennsylvania Supreme Court denied Petitioner's appeal. *Commonwealth v. Bashir*, No. 496 MAL 2015, 634 Pa. 724 (Pa. 2015).

On August 24, 2016, Petitioner filed a PCRA petition *pro se*, and the PCRA court subsequently appointed Petitioner counsel, Attorney Kevin Hoffman. *Commonwealth v. Bashir*, No. CP-67-CR-0007979-2012 (York Cnty. Ct. Com. Pl.). Counsel filed amended petitions on February 21, 2017 and April 3, 2017. *Id*. These petitions included allegations that trial counsel failed to call an expert witness who could have addressed Victim's competency to testify and failed to file a motion to challenge Victim's competency. Petitioner also requested fees to retain Dr. Amy Taylor, an expert in forensic psychology, to meet with Victim and determine if Victim had been competent to testify at trial. *Commonwealth v. Bashir*, 248 A.3d 486, 2021 WL 141514, *2 (Pa. Sup. Ct. Jan. 15, 2021).

Following an April 25, 2017 status hearing, the PCRA court granted Petitioner's request for fees to retain Dr. Taylor, but limited Dr. Taylor's report to a review of Victim's medical records prior to trial. *Id*. The PCRA court did not permit Dr. Taylor to conduct a face-to-face interview with Victim. *Id*.

PCRA counsel then changed to Attorney Charles Hobbs, and Petitioner filed another amended petition on September 30, 2019. *Commonwealth v. Bashir*, No. CP-67-CR-0007979-2012. A hearing was held on October 30, 2019, and Detective Sowers, Dr. Taylor, and trial counsel testified:

> Detective Sowers repeated much of his trial testimony regarding Victim's identification of [Petitioner]. Dr. Taylor testified that she studied Victim's medical records from September 2011 to August 2012, and while she could not provide an opinion as to Victim's competency to testify at the time of trial, she stated that had she been consulted prior to trial, she would have suggested that a competency evaluation of Victim be conducted.
>
> Trial counsel testified that she addressed Victim's hallucinations, brain swelling, and inconsistencies in his memory by calling or cross-examining various medical and lay witnesses, including psychiatrist, Dr. Stephen Dilts; Dr. Daniel Carney, the emergency room doctor who treated Victim following the shooting; and Lori Genovese, the medical custodian of records. Trial counsel testified that she and [Petitioner] had numerous conversations about the problems with Victim's memory and Victim's identification of [Petitioner]. Trial counsel, however, conceded that she did not review or consider Pennsylvania Rule of Evidence 601 prior to [Petitioner]'s trial, and had never previously challenged an adult witness' competency. Trial counsel further stated that she did not consider challenging Victim's competency or hiring an expert to assist in doing so, and now believes her failure to do so was a mistake. Trial counsel also stated that she should have filed a motion to suppress Victim's identification of [Petitioner] based on Victim's memory issues.

*Bashir*, 2021WL 141514 at *2.[1]  The PCRA court denied the petition on January 8, 2020.  *Id*; *Bashir*, No. CP-67-CR-0007979-2012; Doc. 2-14.  On January 24, 2020, Petitioner filed a notice of appeal and filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).  *Bashir,* 2021 WL 141514, at *2; *Bashir*, No. CP-67-CR-0007979-2012.  Petitioner raised the following questions:

> Whether the [PCRA] court erred and abused its discretion by finding that [Petitioner]'s trial counsel was not ineffective for failing to file a motion challenging the competency of the victim?
>
> Whether the [PCRA] court erred and abused its discretion by finding that [Petitioner]'s trial counsel was not ineffective for failing to consult with an expert witness to opine whether or not the victim was competent to testify pursuant to Pa.R.[E.] 601?
>
> Whether the [PCRA] court erred and abused its discretion by finding that [Petitioner]'s trial counsel was not ineffective for failing to file a motion to suppress the victim's identification of [Petitioner], which was the product of police suggestiveness and confabulation by the victim?

*Bashir,* 2021 WL 141514, at *3.  The Superior Court affirmed the PCRA court's order denying the PCRA petition.  *Id*.  Petitioner appealed this determination to the Pennsylvania Supreme Court, and that appeal was denied.  *Commonwealth v. Bashir*, No. 74 MAL 2021, 260 A.3d 72 (Pa. Aug. 3, 2021).

---

[1] Transcripts were attached to the petition by Petitioner.  (Docs. 2-2, 2-3.)

Petitioner then filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 before this court on October 1, 2021.[2]  (Doc. 1.)  The petition raises three grounds for review: (1) ineffective assistance of trial counsel for failing to file a motion challenging the competency of Victim[3] to testify as a witness pursuant to Pa.R.E. 601; (2) ineffective assistance of trial counsel for failing to consult with an expert witness to opine whether or not the victim was competent to testify pursuant to Pa.R.E. 601; and (3) ineffective assistance of trial counsel for failing to file a motion to suppress Victim's identification of petitioner as a product of police suggestiveness and confabulation by Victim.  (*Id.*)

## VENUE

Under 28 U.S.C. § 2241(d), a petition for a writ of habeas corpus under Section 2254 can be filed in either the district where the petitioner is in custody, or in the district where the petitioner was convicted and sentenced.  28 U.S.C. § 2241(d).  Petitioner was convicted and sentenced in York County, Pennsylvania, which is located in this district.  *See* 28 U.S.C. § 118(b).  Therefore, venue in this district is proper.

---

[2] The petition was received and filed by the court on October 7, 2021.  (Doc. 1.)

[3] Petitioner uses the term witness, but refers to this witness as having memory and mental impairments, which the court relies upon to conclude that this witness is Victim.  (Doc. 1, p. 5.)

## STANDARD OF REVIEW

Habeas corpus is an "'extraordinary remedy' reserved for defendants who were 'grievously wronged' by the criminal proceedings." *See Dunn v. Colleran*, 247 F.3d 450, 468 (3d Cir. 2001) (quoting *Calderon v. Coleman*, 525 U.S. 414, 146 (1998)).  The exercise of restraint by a federal court in reviewing and granting habeas relief is appropriate due to considerations of comity and federalism.  *See Engle v. Isaac*, 456 U.S. 107 (1982).  "The States possess primary authority for defining and enforcing the criminal law.  In criminal trials they also hold the initial responsibility for vindicating constitutional rights.  Federal intrusions into state criminal trials frustrate both the States' sovereign power and their good-faith attempts to honor constitutional law."  *Id.*  States also have a recognized interest in the finality of convictions that have survived direct review within the state court system.  *See Brecht v. Abrahamson*, 507 U.S. 619, 620 (1993).

A district court may entertain an application for a writ of habeas corpus filed by a person in state custody "only on the ground that he is in custody in violation of the Constitution or laws of the United States."  28 U.S.C. § 2254(a).  If a claim presented in a § 2254 petition has been adjudicated on the merits in state court proceedings, habeas relief cannot be granted unless:

> the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence
presented in the State court proceeding.

*Id.* § 2254(d).

## DISCUSSION

All of Petitioner's challenges are premised on alleged Sixth Amendment

violations resulting from the ineffective assistance of trial counsel. (Doc. 1.) The

Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall

enjoy the right . . . to have the assistance of counsel for his defence." U.S. Const.

amend VI. The purpose of the right to the assistance of counsel is to ensure a fair

trial, and "the Court has recognized that 'the right to counsel is the right to the

effective assistance of counsel.'" *Strickland*, 466 U.S. at 686 (quoting *McMann v.

Richardson*, 397 U.S. 759, 771 n.14 (1970)). "The benchmark for judging any

claim of ineffectiveness must be whether counsel's conduct so undermined the

proper functioning of the adversarial process that the trial cannot be relied on as

having produced a just result." *Id.* "The Sixth Amendment guarantees reasonable

competence, not perfect advocacy judged with the benefit of hindsight."

*Yarborough v. Gentry*, 540 U.S. 1, 8 (2003). The clearly established federal law as

to an ineffective-assistance-of-counsel claim is *Strickland*, which sets forth the

following two-prong analysis.

Under the first prong of *Strickland*, the petitioner must establish that

counsel's performance was deficient. 466 U.S. at 687. "*Strickland's* first prong

sets a high bar." *Buck v. Davis*, 137 S. Ct. 759, 775 (2017).  To establish that counsel's performance was deficient, the petitioner must establish that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.  "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689.  As such, the court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance," *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 689), and "[t]o overcome that presumption, a defendant must show that counsel failed to act 'reasonabl[y] considering all the circumstances[.]'" *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland*, 466 U.S. at 688).  "The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 687).

Under the second prong of *Strickland*, the petitioner must establish prejudice. *Strickland*, 466 U.S. at 687.  To do so, the petitioner must show a reasonable probability that, if not for counsel's errors, the result of the proceeding would have been different. *Id.* at 694.  The petitioner "need not prove that the evidence would have been insufficient if not for counsel's errors . . . [or] 'that counsel's deficient conduct more likely than not altered the outcome.'" *Saranchak*

*v. Sec'y, Pa. Dep't of Corr.*, 802 F.3d 579, 588 (3d Cir. 2015) (quoting *Strickland*, 466 U.S. at 693).  Rather, the issue is whether there is a reasonable probability of a different result.  *Id.*  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.  "That requires a 'substantial,' not just 'conceivable,' likelihood of a different result."  *Pinholster*, 563 U.S. at 189 (quoting *Harrington*, 562 U.S. at 112).

To prevail on an ineffective-assistance claim, a petitioner must satisfy both prongs of *Strickland*.  A court can choose which prong of the standard to apply first, and it may reject an ineffectiveness claim on the ground that the petitioner was not prejudiced without addressing whether counsel's performance was deficient.  *Strickland*, 466 U.S. at 697.

"Surmounting *Strickland*'s high bar is never an easy task."  *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).  "Even under *de novo* review, the standard for judging counsel's representation is a most deferential one."  *Premo v. Moore*, 562 U.S. 115, 122 (2011).  And "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult."  *Harrington*, 562 U.S. at 105.  When the state court has decided the claim on the merits, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'"  *Knowles v.*

*Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).  "And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."  *Id.*

In addressing Petitioner's specific claims of ineffective assistance of counsel, the Superior Court applied the governing test for ineffective assistance of counsel claims announced by the Pennsylvania Supreme Court in *Commonwealth v. Pierce*, 537 Pa. 514, 524 (1994).  *Bashir*, 2021 WL 141514, at *3–4 ("When asserting a claim of ineffective assistance of counsel, the petitioner is required to demonstrate: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for her action or inaction; and, (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.").  The United States Court of Appeals for the Third Circuit has determined that the *Pierce* test conforms to established federal law and is "not contrary to the *Strickland* test."  *Henderson v. DiGuglielmo*, 138 F. App'x 463, 469 (3d Cir. 2005) (citing *Werts v. Vaughn*, 228 F.3d 178, 203–04 (3d Cir. 2000)) (recognizing the *Pierce* test as materially identical to the *Strickland* test).  Therefore, the Superior Court's applied test is not "contrary to" the test established in *Strickland.*

Nor does the Superior Court's analysis constitute an objectively unreasonable application of federal law.  *See Knowles*, 556 U.S. at 123.  As discussed in detail below, each of the three challenges were addressed by the Superior Court, and the Superior Court's determinations were not unreasonable under the *Strickland* standard.  Therefore, the court will dismiss the petition on all three grounds.

**A. The Superior Court's Determination of Petitioner's First Challenge Was Not Unreasonable Under *Strickland*.**

Petitioner's first challenge is that trial counsel's failure to file a motion challenging the competency of Victim to testify as a witness pursuant to Pa.R.E. 601 amounted a Sixth Amendment violation.  This challenge was denied by the Superior Court because Petitioner could not succeed in asserting that Victim was incompetent to testify under Pennsylvania law.  The Superior Court found that Pa.R.E. 601 presumes all witnesses are competent to testify, that the trial court witnessed Victim's testimony, and that the trial court had no doubts as to Victim's competency. *Bashir*, 2021 WL 141514 at *5.  As set forth by the Superior Court, Pa.R.E. 601 states the following:

> **(a)** *General Rule.* Every person is competent to be a witness except as otherwise provided by statute or in these rules.

> **(b)** *Disqualification for Specific Defects.* A person is incompetent to testify if the court finds that because of a mental condition or immaturity the person:

**(1)** is, or was, at any relevant time, incapable of perceiving accurately

**(2)** is unable to express himself or herself so as to be understood either directly or through an interpreter

**(3)** has an impaired memory; or

**(4)** does not sufficiently understand the duty to tell the truth.

The Superior Court interpreted Pa.R.E. 601 in accord with *Commonwealth v. Boich* as follows:

> In general, the testimony of any person, regardless of his mental condition, is competent evidence, unless it contributes nothing at all because the victim is wholly untrustworthy. Thus, in Pennsylvania, [a witness is] presumed competent to testify, and it is incumbent upon the party challenging the testimony to establish incompetence. **Above all, given the general presumption of competency of all witnesses, a court ought not to order a competency investigation, unless the court has actually observed the witness testify and still has doubts about the witness' competency.**
>
> Claims that a witness' memory has been corrupted by insanity, mental retardation, hypnosis, or taint go to the competency of that witness to testify. The capacity to remember and the ability to testify truthfully about the matter remembered are components of testimonial competency. The party alleging a witness is incompetent to testify must prove that contention by clear and convincing evidence.

982 A.2d 102, 109–10 (Pa. Super. 2009) (en banc), appeal denied, 607 Pa. 689 (2010) (emphasis added). The Superior Court then summarized the PCRA court's reasoning in denying Petitioner's challenge as follows:

> The trial court observed [Victim] testify at trial and, a few months after the trial at [Petitioner]'s post-sentence motion hearing, this [c]ourt affirmed [Victim]'s obvious competency to testify at trial. At that time this [c]ourt stated, "[Victim] testified he identified [Petitioner] as the

shooter.  When his testimony was presented, there was no indication in the eyes of the [c]ourt that he was incompetent or unable to reason, or had any sort of cognitive defect that rendered him unable to testify or to be incompetent.  The jury could rely upon his testimony."  The [c]ourt, at that time, had the benefit of recently and directly witnessing [Victim]'s testimony and found that [Victim] satisfied the factors for determining competency laid out by the Pennsylvania Supreme Court: "(1) the capacity to perceive an event with accuracy; (2) the ability to remember; (3) the ability to understand questions and communicate a response; and (4) a consciousness of the duty to tell the truth."

The [c]ourt also had the benefit of the testimony of Dr. Stephen Dilts, a defense witness, who testified at length at trial regarding the potential defects in [Victim]'s reasoning caused by [Petitioner]'s infliction of a gunshot wound to [Victim]'s brain.  Dr. Dilts, a qualified psychiatrist, testified before the [c]ourt and jury regarding [Victim]'s possible loss of perception and memory. This [c]ourt, with the insight provided by the psychiatrist's expert testimony, found [Victim] competent to testify. Under Rule 601(b), a determination of a witness's competency is ultimately in the hands of the trial court.  Because there was not a reasonable probability that this [c]ourt would have found [Victim] incompetent to stand trial even if his trial counsel had filed a motion challenging his competence, [Petitioner] was not prejudiced by the choice to not submit such a motion and his claim is denied.[2]

> [2] To eliminate any doubt caused by the revisionist approach of this PCRA, [Victim] at the time of his trial presented no indication of lack of competency. He did have some recollection issues, which were no different than any other fact witness.  [Petitioner] repeatedly confuses the concepts of impeachment regarding memory accuracy and lack of competency in his PCRA.  The ability to remember is one factor in determining competency. . . . Having a flawless memory is not.

*Bashir*, 2021 WL 141514 at *5; *see also* Doc. 2-14, pp. 6–7[4].  The Superior Court saw "no reason to disrupt the PCRA court's reasoning.  As the PCRA court explained, the trial court witnessed Victim's testimony and had no doubts as to Victim's competency."  *Bashir*, 2021 WL 141514 at *5.

Essentially, the Superior Court found that even if trial counsel had filed a motion challenging competency under Pa.R.E. 601, the motion would have been denied.  While under the *Pierce* standard, this addresses the first *Strickland* prong, that the underling claim was without merit.  In other words, the Superior Court concluded that counsel cannot be ineffective for failing to file a motion that would not have succeeded.  Under the *Strickland* standard, this also addresses the second prong–that Petitioner did not establish prejudice.  The court finds the Superior Court's determination is not unreasonable under *Strickland*.  Petitioner's trial counsel raised the issue of Victim's incompetence with the trial court.  This was the same court[5] that witnessed Victim's testimony, and it did not view Victim as incompetent.  As such, any motion challenging Victim's competency would have failed.  Therefore, the petition will be dismissed as to Petitioner's initial challenge.

---

[4] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

[5] The trial and the post-sentencing motions were addressed by the same judge.  *See Commonwealth v. Bashir*, No. CP-67-CR-0007373-2012 (York Cnty. Ct. Com. Pl.).

15

**B. The Superior Court's Determination of Petitioner's Second Challenge Was Not Unreasonable Under *Strickland*.**

Petitioner's second challenge is that trial counsel's failure to consult with an expert witness to opine whether or not Victim was competent to testify pursuant to Pa.R.E. 601 violated the Sixth Amendment.  This challenge also fails.  The Superior Court summarized the PCRA court's reasoning as follows:

> [Petitioner] . . . argues that his trial counsel was ineffective for failing to consult with an expert witness [regarding] whether [Victim] was medically competent to testify as a witness in this case pursuant to Pa.R.E. 601. . . . [Petitioner]'s trial counsel had an expert witness testify at trial regarding the extent and severity of [Victim]'s injuries and their potential effects on [Victim]'s cognition.  Hiring another expert merely to advise trial counsel on whether to file a competency evaluation would have been an unreasonable course of conduct for trial counsel, a public defender, when the judge and jury already had the benefit of the testimony of a qualified expert who had personally interviewed [Victim] during his recovery before trial.

> This case evolved over a continuum of time that began with the shooting and ended with the trial.  The PCRA defense has repeatedly sought to mix medical facts and brain trauma conditions that may have existed right after [Victim] was shot (and then resolved), and to bootstrap those impairments into creating an argument that a competency evaluation was needed during judicial proceedings before [Victim] testified.  This argument is built on a foundation of faulty logic that ignores that [Victim] significantly healed and recovered his memory prior to trial. This healing and progress was reflected in the medical testimony at trial. The fact that the defense counsel did not choose to pursue this same path of faulty logic is not ineffectiveness— it was good lawyering, by not pursuing a meritless position.

> As part of his PCRA proceedings, [Petitioner] hired a forensic psychologist, Dr. Amy Taylor, to create a report, based on trial transcripts and a review of [Victim]'s past psychological and medical

evaluations. She was not granted a face-to-face interview with [Victim]. She sought to analyze [Victim]'s potential competence at the time of trial from records created years earlier. [Petitioner] argues Dr. Taylor's report, created four years after [Petitioner]'s trial concluded, shows that [Victim] should have received a mental competency evaluation prior to giving testimony at trial. This is not true. The report was inconclusive at best. The most the forensic expert could testify to was that, based on her review of past records, if she had been consulted prior to the trial, she would have recommended that the [c]ourt order a psychological examination of [Victim] to determine whether or not he was medically competent to testify. Dr. Taylor made it clear that since she was not personally at the trial and did not have the opportunity to interview the witness, her conclusions could not be made with a reasonable degree of psychological certainty. Her testimony, five years after the trial, does not convince this [c]ourt, which had the benefit of examining [Victim] directly, that hiring a second expert prior to trial to expound on [Victim]'s competence would have been a reasonable course of action.

*Bashir*, 2021 WL 141514 at *6; *see also* Doc. 2-14, pp. 9–11. The Superior Court

agreed with the PCRA court's analysis stating that "[t]rial counsel had an expert

witness testify at trial concerning Victim's injuries and their effect on Victim's

memory and cognition. [Petitioner] is unable to show that trial counsel's failure to

consult with an additional expert witness concerning Victim's competency to testify

was unreasonable." *Bashir*, 2021 WL 141514 at *7.

Essentially, the Superior Court found that trial counsel was not deficient in

failing to consult a second expert witness concerning Victim's injuries and their

effect on Victim's memory and cognition. This finding addresses the second prong

of the *Pierce* test applied by the Superior Court, i.e. that counsel had a reasonable

basis for not consulting a second medical expert. The Superior Court's rationale

also addresses the first prong of *Strickland*, i.e. trial counsel's performance was not deficient for not consulting a second medical expert. This court finds that the state court's determination was not unreasonable under *Strickland*. Therefore, the petition will be dismissed as to Petitioner's second challenge.

## C. The Superior Court's Determination of Petitioner's Third Challenge Was Not Unreasonable Under *Strickland*.

Petitioner's third challenge is that trial counsel's failure to file a motion to suppress Victim's identification of Petitioner violated the Sixth Amendment. This challenge also fails. Here, Petitioner asserts that Victim's identification of Petitioner was the product of policy suggestiveness and confabulation by Victim. Again, the Superior Court cited to the PCRA Court's treatment of the issue:

> [Petitioner] argues the identification procedure used by the police was unduly suggestive given the totality of the circumstances. [Petitioner] alleges the suggestiveness comes from the detective showing [Victim] [Petitioner]'s picture singly, after getting a lethargic response during a full photographic line-up. [Petitioner] claims his trial counsel was ineffective because she did not try to suppress this out-of-court identification. The claim is rejected because the record clearly shows [Victim] had previously identified [Petitioner] verbally before the allegedly suggestive photographic lineup and there was an obvious independent basis for the identification. [Victim] testified at trial that he knew who [Petitioner] was through his prior acquaintance with [Petitioner]'s mother, Tanoue . . ., who he knew lived on the "South Side" of town. This is part of the independent basis for [Victim]'s knowledge of [Petitioner]'s identity outside the photo lineup. [Petitioner] is correct that the suggestiveness of an out-of-court identification must be determined by the totality of the circumstances, but in this case, the totality does not weigh in his favor.

As the Superior Court noted in [its] opinion rejecting [Petitioner]'s claim that [Victim]'s identification was against the weight of the evidence, "Two witnesses, [Victim]'s mother and brother, confirmed that [Victim] recalled who perpetrated the crime a couple of months after the shooting. [Victim] thereafter identified [Petitioner] as the shooter, and he knew the name of [Petitioner]'s mother and where they lived." These identifications were prior to and independent of the allegedly suggestive photo lineup. [Victim] also identified [Petitioner] by name and street to the detective who administered the photo lineup five days prior to viewing the photos. The detective administered the photo lineup . . . as an extra measure to ensure the Commonwealth had the best foundation for its investigation. The Commonwealth already had sufficient identification evidence from [Victim] to create an independent basis for an identification even without the photo lineup. The photos were in fact surplusage to identify the shooter by the time [Victim] was shown [Petitioner]'s single photo.

The issue before the [c]ourt is whether [Petitioner]'s trial counsel was ineffective for failing to file a suppression motion regarding [Victim]'s identification of [Petitioner]. This [c]ourt finds that such a motion would have been without merit given the independent basis for [Victim]'s identification of [Petitioner] by reference to his mother and address. The precedent in this matter is clear that when there is an independent basis for an identification, with enough independence to overcome the suggestiveness of a photo lineup by clear and convincing evidence given the totality of the circumstances, then the in-court identification of [Petitioner] will be admissible. . . .

* * *

The factors in this case weigh in favor of finding an independent basis for [Victim]'s identification of [Petitioner]. . . . The identification's independent origin negates the argument that [Victim]'s identification was the result of a suggestive procedure. The independent basis comes from [Victim]'s prior encounter with [Petitioner] weeks before the shooting took place, from his having a clear view of [Petitioner] right before he was shot, from [Victim]'s identification of [Petitioner] to his mother and brother before the photo lineup, and his identification of [Petitioner] to the detective five-days before the photo lineup. Taking the independent origins of [Victim]'s identification into account, this

> [c]ourt holds that it was reasonable for [Petitioner]'s trial counsel to not file a suppression [motion] that would not have successfully blocked the admission of [Victim]'s identification.

*Bashir*, 2021 WL 141514 at *8–9; *see also* Doc. 2-14, pp. 12–14, 16–17.  The Superior Court agreed with this analysis:

> Victim provided an independent identification of [Petitioner] prior to the allegedly suggestive photo identification. Victim identified [Petitioner] by name and street address, and even identified [Petitioner]'s mother.  Thus, any suppression motion counsel filed based upon the allegedly suggestive photo identification would have failed, and counsel cannot be deemed ineffective for failing to file a meritless suppression motion.

*Bashir*, 2021 WL 141514 at *9.

The Superior Court denied Petitioner's third challenged under the first prong of the *Pierce* test: "counsel cannot be deemed ineffective for failing to file a meritless suppression motion."  *Bashir*, 2021 WL 141514 at *9.  Such a determination falls under the second prong of *Strickland*.  Petitioner cannot establish prejudice for trial counsel's failure to file a motion that would not have succeeded.  Therefore, the Superior Court's determination was not unreasonable under *Strickland*, and the petition will be dismissed as to Petitioner's third, and final, challenge.

### CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order

in a proceeding under 28 U.S.C. § 2254.  A COA may issue only if the applicant

has made a substantial showing of the denial of a constitutional right.  28 U.S.C. §

2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of

reason could disagree with the district court's resolution of his constitutional

claims or that jurists could conclude the issues presented are adequate to deserve

encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327

(2003).  Here, jurists of reason would not find the disposition of this case

debatable.  Accordingly, no COA will be issued.

## CONCLUSION

For the reasons set forth above, the court will dismiss the petition for writ of

habeas corpus.

A separate order will be issued.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: September 26, 2023